**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-10550**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff - Appellee,**

**versus**

**ALLAN GLEN VON HOFF,**
**also known as Allan Christian,**
**JIMMIE LEE BATES, JOHN WILLIAM HOELZER,**
**LEWIS HUDSON POWELL, III,**

**Defendants - Appellants.**

_____

**Appeal from the United States District Court**
**for the Northern District of Texas**
**( 4:94-CR-098-A )**
_____

August 19, 1996

Before POLITZ, Chief Judge, JOLLY and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

At issue are convictions and sentences arising out of a fraudulent telemarketing scheme. Von Hoff, Bates, Hoelzer, and Powell raise numerous due process, evidentiary and other claims. We **AFFIRM**.

I.

[*]    Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

In early 1995, appellants were found guilty on several counts of various fraud offenses for their parts in the telemarketing scheme of GTP, Inc. Each appellant had a role in GTP: Powell as an office manager; Bates as a telemarketer and later a sales manager; Hoelzer and Von Hoff as telemarketers.

The scheme began in early 1988 and continued until GTP was raided by law enforcement two years later. The raid was the culmination of an investigation by Postal Inspectors and Internal Revenue Agents, during which agents examined documents in GTP's trash and made calls to GTP posing as customers.

It is undisputed that GTP was a fraudulent scheme. To sell water purifiers, and later, home security systems, GTP sent postcards to victims throughout the United States telling the recipient that they were "absolutely guaranteed" to receive one of five "fabulous awards. No purchase necessary". The awards listed on the card included a new Chevrolet Blazer and a $5,000 cashier's check, and the card further instructed the recipient to call to learn how to receive more of the listed prizes.

Approximately 20-30 GTP telephone operators, housed in a "boiler room", received calls prompted by the cards and told victims that they would be eligible to receive more prizes if they elected to purchase a product from GTP. GTP provided its sales staff with scripts to guide the sales pitch. The scripts contained false and misleading statements, and telemarketers also embellished the pitch with further misrepresentations. After the sale was

initially made by the telemarketer, a sales manager would "button up" the sale by verifying certain information.

GTP never awarded a Blazer or a $5,000 cashier's check, but instead awarded only watches and retail merchandise checks valued at substantially less than touted by GTP. And, the products sold were grossly overpriced.

In October 1994, Powell, Bates, Von Hoff, and several others were indicted on various fraud charges arising out of their activities with GTP. That December, a superseding indictment added charges against Hoelzer. Several of those charged entered into plea agreements; appellants proceeded to trial and were convicted on several counts in February 1995.

## II.

The numerous issues at hand cover the board. None have merit.

### A.

Convicted of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and wire fraud, in violation 18 U.S.C. § 1343, Bates and Hoelzer challenge the sufficiency of the evidence. Although it is undisputed that GTP was a fraudulent scheme, each asserts that, for them, the evidence failed to demonstrate the requisite knowledge and intent.

#### 1.

For starters, the standard of review is in dispute. Bates and Hoelzer moved for acquittal at the close of the Government's case-in-chief, but did not do so at the close of all the evidence. Only

Von Hoff did.  As a result, the Government advances the more onerous "manifest miscarriage of justice" standard.

a.

"Where a defendant fails to renew his motion at the close of all the evidence, after defense evidence has been presented, he waives his objection to the earlier denial of his motion." *United States v. Daniel*, 957 F.2d 162, 164 (5th Cir. 1992).  Therefore, our review narrows greatly to the manifest miscarriage standard. *Id.*  For reversal, the record must be "devoid of evidence pointing to guilt."  *United States v. Robles-Pantoja*, 887 F.2d 1250, 1254 (5th Cir. 1989).  Bates and Hoelzer fall far short of clearing this hurdle.

b.

Alternatively, had the acquittal motions been renewed, reversal would be in order only if, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could not have found the essential elements of the offenses charged beyond a reasonable doubt.  *E.g.*, *United States v. Zuniga*, 18 F.3d 1254, 1260 (5th Cir.), *cert. denied*, __ U.S.__, 115 S. Ct. 214 (1994).  *See also*, *United States v. Aggarwal*, 17 F.3d 737, 740 (5th Cir. 1994) (reasonable jury can find intent based on circumstantial evidence and need not exclude every hypothesis of innocence).  Even under this standard, the evidence was more than sufficient.

2.

The record included, *inter alia*, witness (customer caller) testimony combined with documentary evidence linking those callers to the defendants. The witnesses testified regarding the representations made by the persons who took their calls, and the documentary evidence consisted of call logs and "button-up" forms, which were created and signed by defendants and referred to the callers by both name and credit card numbers.

a.

Numerous witnesses testified that Bates performed the "button up" on their calls. Each was linked to Bates through documentary evidence.

Customer Mellenbruch testified that, although he explained to Bates that he did not wish to purchase anything, his credit card was charged. He testified that Bates assured him that he would only be charged for the shipping of his award, which he never received.

Customer Brady testified that, upon recognizing that the operation was probably fraudulent, he informed the salesman that he did not want either the product or the Blazer. When transferred to Bates, he told her that he did not want to purchase anything, did not want a Blazer, and did not want his credit card charged. Bates responded that she could not stop delivery of the Blazer. Brady's credit card was charged and, needless to say, he did not receive a Blazer.

Customer Faulkner testified that Bates assured him that he could receive cash rather than the $5,500 worth of prizes that he was guaranteed.

Customer Whitby testified that Bates elicited his credit card number under the pretext that it was necessary to confirm that he was a valid credit card holder and thus qualified to participate. Although he told Bates that he did not want to purchase the security system, his card was charged.

### b.

The evidence against Hoelzer combined customer testimony describing his sales pitch with documentary evidence -- GTP sales logs and Hoelzer's handwritten call records -- that tied the particular customer to him.

Customer Bennett testified that Hoelzer told him that his was the winning card, placed Bennett on hold while he purported to confirm the number from the card in the computer (no telemarketer had access to any computer), told Bennett he had won a Blazer and asked what color he would prefer, and promised delivery in six to eight weeks. Bennett testified that he believed that he would receive the Blazer if he ordered the security system and therefore agreed to do so in reliance on Hoelzer's misrepresentations that he had won the Blazer.

Customer Watkins testified that Hoelzer told her he needed her credit card number only to process her awards; that she told him

she did not want to purchase anything; and that, nevertheless, her card was charged, but she never received anything.

Customer Wilcox testified that Hoelzer told him that his card would not be charged for 30 days after receiving the system and that only when Wilcox called back to confirm the purchase would his account be charged. This was despite the fact that GTP's salespeople had been told that credit cards would be charged prior to shipment. Wilcox was charged immediately, but never received the system.

Customer Golden testified that Hoelzer made a similar misrepresentation to her when he told her that she could use her purifier for ten days before being charged; however her card was charged before she received the product. She returned the water purifier but her account was never credited.

Customer Brendon testified that he was victimized by the same tactic when Hoelzer assured him of a 60-day free trial period for his security system. Although Brendon never received the system, his card was charged.

### B.

The appellants assert, based on numerous examples, that their due process rights were violated because, in sum, the trial court abandoned its neutral role and became an advocate for the Government. They point to the court's limiting opening statements; eliciting testimony favorable to the Government by questioning witnesses; asking questions to establish admissibility of

- 7 -

Government evidence; terminating cross-examination examination of certain witnesses; inhibiting defense testimony; engaging in hostile cross-examination of defendants; conveying to the jury disbelief in defendants' testimony (all of the appellants except Von Hoff testified); rebuking defense counsel in absence of objection by the Government; providing the jury with the indictment but not the written jury charge; and limiting closing argument to eight minutes per defendant and then interrupting it. They claim that these points individually and cumulatively compel reversible error.

To violate due process, the judge's conduct must be so prejudicial as to deny a fair trial. *United States v. Bermea*, 30 F.3d 1539, 1569, __ U.S. __, 115 S. Ct. 1113 (1995). But, the trial transcript reveals little that might be construed as an at-trial claim of due process violation.

No objection was made urging that a ruling or other action by the court was violative of due process. In fact, quite often, no objection of any sort was made. For example, there was no objection regarding the limitations on opening statements or closing arguments. Therefore, we review such issues only for plain error, in accordance with the long-established rule that error must be preserved at trial. *E.g.*, *United States v. Calverley*, 37 F.3d 160 (5th Cir. 1994), *cert. denied*, __ U.S. __, 115 S. Ct. 1266 (1995). As to the issues which were preserved by contemporaneous

objections, we review, of course, only for abuse of discretion. *E.g.*, **United** *States v. Clemonts*, 73 F.3d 1330, 1334 (5th Cir. 1996). We do not find reversible error under either standard.

On two occasions, the court advised the jury that it was not to be swayed, by any of the court's questions or statements, from its role as fact finder. Moreover, none of the asserted instances of overreaching by the judge fall beyond his proper role of maintaining control over the trial and seeking to move it along in a reasonably timely fashion. While we do not dispute that "the district judge actively managed" the trial, "we conclude that ... [his] actions ... were within his broad discretion to manage the pace and objectivity of the trial." *United States v. Mizell*, __ F.3d __, slip op. 95-10593, p. 4444 (5th Cir. July 1, 1996).

Concerning the written charge, unlike the indictment, not being taken into the jury room, none of the defendants either requested it or objected when the court confirmed that it did not permit it in the jury room. Once again, we review only for plain error; there is none.

Allowing the jury to have a copy of the charge during its deliberations is problematic, because "[w]hile not error in itself, the practice is conducive to dissection of the charge by the jury and overemphasis of isolated parts rather than consideration of the charge as a whole." *United States v. Schilleci*, 545 F.2d 519, 526 (5th Cir. 1977). As to the indictment, the trial judge stated at

the beginning and end of trial that it was not evidence and instructed the jury not to consider it as proof of any fact.  It is well-settled that "juries are presumed to follow their instructions."  *Zafiro v. United States*, __ U.S.__, 113 S. Ct. 933, 939 (1993).

C.

Linked in part to the due process contention are challenges to evidentiary rulings.  There was no abuse of discretion.

1.

Von Hoff's attempt to question prosecution witness Field regarding the general operation of GTP's business was beyond the scope of her direct testimony, which concerned Powell's familiarity with GTP operations.  Von Hoff does not assert that his questioning would have elicited information from which the jury might have found bias against Von Hoff or reason to doubt Field's ability to recount accurately the substance of her testimony, but rather that he hoped to establish by description of GTP's organization that only top management were responsible for the fraud.  This attempt to use cross-examination for development of defense evidence violated the trial court's limitation of it, consistent with FED. R. EVID. 611(b), to impeachment and matters within the scope of direct.

2.

Next, Von Hoff challenges three Government exhibits.

a.

Exhibits 193 and 196 purportedly contain "hearsay within hearsay". They are computer printouts of summaries entered by GTP employees of telephone conversations with potential customers, and were admitted pursuant to the hearsay business records exception. FED R. EVID. 803(6). Testimony elicited by Von Hoff, that the information in the documents was recorded contemporaneously with its receipt from a customer, established its admissibility.

b.

Exhibit 143, a complaint letter from a customer was properly admitted on the basis that it was not offered for the truth of the matter stated but instead to establish Von Hoff's awareness of the complaint.

In the alternative, any error concerning these three exhibits was harmless. *See* FED. R. EVID. 103.

D.

For the jury instructions challenged on appeal, it is most doubtful whether each defendant properly preserved the issue. But, in light of the trial court's considering an objection by one defendant to inure to the benefit of all, and the fact that we reach the same conclusion regardless of whether plain error or abuse of discretion frames the standard of review, we need not address the point. Reviewing under the more lenient abuse of discretion standard, we find none.

1.

Failure to give "an instruction constitutes reversible error only ... [if] (1) the requested instruction is substantially correct; (2) the actual charge ... did not substantially cover the content of the proposed instruction; and (3) the omission of the instruction would seriously impair the defendant's ability to present his defense." *E.g.*, **United States v. Storm**, 36 F.3d 1289, 1294 (5th Cir. 1994), *cert. denied*, __ U.S. __, 115 S. Ct. 1798 (1995). Concerning the failure to give the requested instruction on specific intent, and to more fully define "willfully", the jury was instructed repeatedly that the defendants had to have intended to further an unlawful purpose; intended to defraud, deceive, cheat, bring about a crime, and violate the law.

The jury was instructed further that it was not sufficient that the defendants acted because of mistake or accident. These instructions amply informed the jury that any action taken in good faith or with innocent motive was not criminally actionable; thus, the instructions did not prevent presenting the defense of good faith.

2.

For a deliberate ignorance instruction to be warranted, the evidence must be capable of "rais[ing] two inferences: (1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposely

- 12 -

contrived to avoid learning of the illegal conduct." *United States v. Lara-Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990). Along that line, evidence of affirmative acts designed to avoid knowledge is not required. *United States v. Faulkner*, 17 F.3d 745, 766 (5th Cir.), *cert. denied*, __ U.S.__, 115 S. Ct. 193 (1994). On the evidence in this case, there was no abuse of discretion in granting the instruction. (In the alternative, the instruction would constitute harmless error at worst.)

Concerning the subjective awareness prong, the following evidence is illustrative: the sales-pitch scripts were facially overwhelmingly suspicious; the sales staff saw the watches, which telemarketers touted as worth $500, but the testimony of an expert, valuing the watches at not more than $45, and the watches (as well as their packaging) placed in evidence provided a basis from which the jurors could have inferred that GTP employees were aware that the watches' value was being misrepresented to customers; and sales staffers were suspiciously denied access to the GTP customer service areas.

As for the avoid knowledge prong, a defendant's failure to inquire when circumstances are overwhelmingly suspicious suggests conscious effort to avoid incriminating knowledge. *United States v. Daniel*, 957 F.2d 162, 169-70 (5th Cir. 1992). No evidence suggested that any of the defendants made such inquiries.

E.

Powell asserts that the Government's closing argument improperly shifted the burden of proof. In this context, as usual, if a defendant's substantial rights were not prejudiced, any error is deemed harmless. *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978).

At issue is the reference, in rebuttal, to Powell's failure to call any witness from Advantage Marketing (a company involved in mailing GTP's postcards, for which Powell tried to collect a debt owed by GTP) to support his assertion that he held no stake in that company. Any error regarding this somewhat tangential issue was cured by the trial court's sustaining the objection to the remark and giving a curative instruction, reminding the jury that Powell had no obligation to present any evidence.

### F.

Finally, Bates, Hoelzer, and Von Hoff contest their sentences.

### 1.

Bates and Hoelzer challenge their perjury enhancements. Obstruction of justice under Sentencing Guidelines § 3C1.1 is a factual finding; accordingly, we review only for clear error. 18 U.S.C. § 3742(e); *United States v. Storm*, 36 F.3d 1289, 1295 (5th Cir. 1994), *cert. denied*, __U.S. __, 115 S. Ct. 1798 (1995). Of course, we review *de novo* the assertions at hand of constitutional error.

### a.

The district court found that Bates committed perjury when she testified that, during her tenure with GTP, she was aware of only one misrepresentation by a telemarketer to a customer. Obviously, the testimony was material to the intent element. The court found the testimony knowingly false and given with intent to persuade the jury to acquit. This finding was not clearly erroneous; there is sufficient evidence in the record to conclude that the enhancement applied. *United States v. Franco-Torres*, 869 F.2d 797, 800 (5th Cir. 1989). In any event, Bates relies on two bases in challenging the enhancement.

First she notes that the testimony was elicited by the court and urges that the manner in which it questioned her conveyed an impression that she was not credible, which led to her conviction and subsequent enhancement. Our research reveals no basis, nor does Bates cite any, for her contention that testimony elicited by the court may not be considered perjury and punished just as if it were elicited by opposing counsel. As noted, the trial court instructed carefully that the jury was the fact finder, and we reject Bates' contention regarding the impression that the judge's questioning could have created for the reasons discussed *supra*.

Likewise, we reject Bates' second basis: that the enhancement penalized her for exercising her right to testify. Needless to say, she does not possess a constitutional right to testify

falsely.  ***United States v. Dunnigan***, 507 U.S. 87, 113A S. Ct. 1111, 1117 (1993).

b.

The court found Hoelzer's testimony that he did not deviate from the telemarketing script to be perjurious; specifically, it found it false in light of other testimony that, in deviation from the script, Hoelzer had misrepresented the timetable for being charged for merchandise.  The court found the testimony willfully false and given in an effort to persuade the jury to acquit. Obviously, contrary to Hoelzer's contention, the testimony was material.  We reject his specious assertion that, because the script was already a misrepresentation, false testimony that he had never deviated from it was not material to the charged offense.

Likewise, Hoelzer's claimed deprivation of the right to indictment and trial before punishment for the crime of perjury is foreclosed by ***Dunnigan***, 507 U.S. at __, 113A S. Ct. at 1118 (holding that § 3C1.1 perjury enhancement is more than mere surrogate for perjury prosecution).

Finally, Hoelzer's claim that his right to equal protection was violated because he was treated differently than non-defendant witnesses who commit perjury is rejected for the obvious reason that criminal defendants and witnesses are not similarly situated for sentencing purposes.

2.

Bates and Von Hoff contest the amount of loss attributable to their conduct. Both contend that the district court erred by attributing all sales during the time of their employment to their conduct. Again, we review only for clear error.

a.

Bates' position at GTP, particularly her sales manager role, provided a sufficient basis to find that she was responsible for a jointly undertaken fraudulent scheme and that the losses caused by the scheme were reasonably foreseeable to her. (Bates asserts erroneously that the court did not make findings on amount of loss; the court adopted the factual findings in the presentence report.)

b.

Von Hoff urges that his loss calculation should not include all sales by his shift (day) because he did not engage in jointly undertaken criminal activity and most certainly should not include those by the other shift (late). It was not clear error to find that the actions of both shifts were foreseeable to him.

III.

For the foregoing reasons, the judgment is

*AFFIRMED*.